# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RB VENTURE PARTNERS LLC, | Case No. 2:23-cv-00837-RFB-BNW |
| Plaintiff, | **ORDER** |
| v. | |
| DUANE BENNETT PARNHAM, | |
| Defendant. | |

Before the Court is Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaims (ECF No. 55). For the following reasons, the Court partially grants Plaintiff's motion.

## I.  PROCEDURAL HISTORY

On May 26, 2023, Plaintiff RB Venture Partners LLC ("RBV") filed a complaint against Defendant Duane Bennett Parnham, seeking damages based on a loan between the Parties. See ECF No. 1. Plaintiff amended its complaint on June 7, 2023. See ECF No. 5.

On May 10, 2024, Defendant answered Plaintiff's complaint, asserting several counterclaims against RBV. See ECF No. 30. With this Court's permission, Defendant amended its answer and counterclaims on October 25, 2024. See ECF Nos. 47 & 50.

On November 15, 2024, Plaintiff filed the instant motion to dismiss, asking the Court to dismiss nearly all of Defendant's counterclaims. See ECF No. 55. After various extensions, Defendant responded on December 30, 2024. See ECF No. 61. Plaintiff filed its reply on January 17, 2025. See ECF No. 62.

On March 20, 2025, the Court stayed discovery pending its resolution of Plaintiff's motion to dismiss. See ECF No. 64.

## II. FACTUAL ALLEGATIONS

Defendant's counterclaims stem from a series of loan agreements and negotiations between the Parties. At this procedural posture, this Court must accept all of Defendant's "well-pleaded allegations" as true. See Rico v. Ducart, 980 F.3d 1292, 1298 (9th Cir. 2020) (citation omitted). Thus, the following factual allegations are drawn from Defendant's First Amended Answer, in which he asserts his counterclaims. See ECF No. 50.

### A. The Loan Agreement

Plaintiff RBV is purportedly an investment firm, and it is operated by Lawrence Minicone, Ronald Oliver Exley, and Scott Martin—amongst others. During the events giving rise to this lawsuit, Defendant Parnham was a minority shareholder of Broadway Strategic Metals Inc. ("BSM"), and he also served as its chief operating officer. Parnham also worked as an independent contractor for BSM.

Around May 2022, the Parties began negotiating a loan for the benefit of BSM. At the outset of these negotiations, RBV held Martin out as a neutral, independent broker who was facilitating a final agreement between the Parties for a commission. In parallel, Martin identified himself as a managing member of Macro Trading Consultants Fusion Strategy ("MTC"). Parnham took these representations at face value.

Nonetheless, Martin was not a neutral third-party broker. He holds an interest in RBV, and he has a longstanding business relationship with Minicone—i.e., another one of its operators. Plaintiff intentionally misrepresented its relationship to Martin so that RBV could propose lopsided terms through a "neutral" intermediary. Under a cloak of neutrality, Martin proposed unfair terms to Parnham, who believed they were legitimate, reasonable, and appropriate based on Martin's purported independence. Amongst other things, Parnham agreed to: (i.) secure the loan with his personal property in the Bahamas; (ii.) a pre-payment penalty; (iii.) a 25% interest rate; and (iv.) a minimum interest payment. Parnham would not have agreed to these terms had he known that Martin was an interested party.

Around May 30, 2022, the Parties executed a loan agreement memorializing these terms ("Loan Agreement"). Shortly thereafter, RBV issued Parnham a $500,000 loan.

### B. Subsequent Negotiations

Around December 2022, RBV realized that it could not foreclose on Parnham's Bahamian property, and it began negotiating a new loan with Parnham to secure additional collateral. RBV proposed rolling his debt into a new loan, which would be secured by Parnham's Canadian properties. Throughout the course of these negotiations, RBV exercised forbearance against Parnham's outstanding balance under the Loan Agreement, and he ceased making payments on it.

In February 2023, Martin asked Parnham to execute new collateral documents, even though RBV did not have the capital to fund a new loan at that time. Martin emphasized that there was "no downside" to executing these documents before a new agreement was formally closed, and he urged Parnham to sign them before the Parties' deal collapsed. When Parnham resisted, Minicone threatened to: (a.) interfere with Parnham and BSM's contracts and (b.) launch legal proceedings against Parnham to impose an "insane legal bill" on him.

Shortly thereafter, RBV brought suit against Parnham.

### III. LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (citation and internal quotation marks omitted). Based on this standard, the

Ninth Circuit has clarified that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). To meet the particularity requirement of Rule 9(b), the complaint must identify the "who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)). In other words, the "plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." In re Stac Elecs. Sec. Litig., 89 F.3d 1399, 1404 (9th Cir. 1996).

Finally, since all of Defendant's counterclaims arise under state law, the Court looks to Nevada law throughout the course of this Order. See In re Cnty. of Orange, 784 F.3d 520, 527 (9th Cir. 2015) ("[F]ederal courts sitting in diversity apply state substantive law.") (citation omitted).

## IV. DISCUSSION

Plaintiff asks this Court to dismiss 6 of Defendant's counterclaims. The Court addresses each one in turn.

### A. Defendant States Plausible Claims for Intentional Misrepresentation (Count One)[1] and Fraudulent Inducement (Count Two)

In Nevada, "[i]ntentional misrepresentation is established by three factors: (1) a false representation that is made with either knowledge or belief that it is false or without a sufficient foundation, (2) an intent to induce another's reliance, and (3) damages that result from this reliance." Nelson v. Heer, 163 P.3d 420, 426 (Nev. 2007) (citation omitted). Fraudulent

---

[1] Although Defendant couches this claim as "fraud," he relies on the elements of fraudulent, or intentional, misrepresentation. The Court analyzes this claim accordingly.

- 4 -

inducement consists of largely the same elements, i.e.: (a.) a false representation; (b.) knowledge of its falsity; (c.) intent to induce another's reliance; (d.) justifiable reliance; and (e.) resulting damages. See Butwinick v. Hepner, No. 56303, 2014 WL 3784111, at 1 (Nev. 2014) (unpublished table decision) (citing J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc., 89 P.3d 1009, 1018 (Nev. 2004)). Plaintiff urges the Court to dismiss Defendant's claims for fraudulent representation and fraudulent inducement because Defendant only makes general, conclusory allegations that fail to establish the elements of either claim with sufficient particularity. The Court disagrees.

Defendant has pled sufficient facts to maintain his fraud-based claims. Based on Defendant's answer, RBV, Martin, and Minicone misrepresented Martin's independence at the outset of the Parties' negotiations in May 2022. Specifically, they held Martin out as a neutral, third-party broker, even though he was directly associated with RBV. In doing so, they wanted Parnham to believe that Martin was an independent broker so that RBV could propose lopsided terms through a "neutral" intermediary. Parnham accepted this misrepresentation at face value, and he agreed to unfair, unreasonable terms that he would not have accepted otherwise, including: an early-payment penalty; a minimum interest payment; and personal collateral. Since then, Parnham has fully performed his obligations under the lopsided terms of the Loan Agreement, meaning he sustained losses through them.

These detailed factual allegations satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), as they adequately explain the substance and context of the alleged fraud at issue. Furthermore, they also state plausible claims for relief because they speak to the elements of Defendant's fraud-based claims; in other words, they plausibly suggest that RVB is liable for intentional misrepresentation and/or fraudulent inducement.

Therefore, the Court declines to dismiss Defendant's fraud-based claims at this time.

**B. Defendant Cannot State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 3)**

"Although every contract contains an implied covenant of good faith and fair dealing, an action in tort for breach of the covenant arises only in rare and exceptional cases when there is a

special relationship between the victim and tortfeasor." Ins. Co. of the West v. Gibson Tile Co., 134 P.3d 698, 702 (Nev. 2006) (citation and internal quotation marks omitted). Plaintiff moves to dismiss Defendant's covenant-based claim because the Parties never had a special relationship. The Court agrees for three reasons.

First, the Nevada Supreme Court has not recognized a special relationship between borrowers and lenders. Cf. id. ("Examples of special relationships include those between insurers and insureds, partners of partnerships, and franchisees and franchisers.") (citation omitted).

Second, Defendant has not asked the Court to recognize a special relationship between the Parties based on Nevada law. Instead, Defendant merely asserts that one exists. The Court is reluctant to unsettle the current boundaries of state law on this record.

Third, the Parties are both experienced, sophisticated commercial actors; therefore, Nevada's public policy does not weigh in favor of recognizing a special relationship between them. Historically, the Nevada Supreme Court has recognized special relationships between parties on unequal footing, where one party is in a "superior or entrusted position." Great Am. Ins. Co. v. Gen. Builders, Inc., 934 P.2d 257, 263 (Nev. 1997) (citation omitted). On the other hand, it has declined to view relationships between experienced commercial actors as "special" for the purposes of the implied covenant of good faith and fair dealing. See, e.g., id. ("Accordingly, we have denied tort liability in certain relationships where agreements have been heavily negotiated and the aggrieved party was a sophisticated businessman.") (citation omitted). The Parties are undoubtedly sophisticated commercial actors, and Defendant engaged in extensive negotiations regarding various loan agreements. Based on the Nevada Supreme Court's guideposts, it is inappropriate to recognize a special relationship between them.

Since the Parties lack a special relationship, Defendant cannot pursue a claim based on the implied covenant of good faith and fair dealing. Therefore, the Court dismisses this claim.

### C. Defendant Has Not Pled Sufficient Facts to Maintain His Claim for Negligent Misrepresentation (Count 4)

To state a claim for negligent misrepresentation, a party must plead: (a.) that they suffered pecuniary loss by (b.) justifiably relying on (c.) false information (d.) communicated by another

who failed to exercise reasonable care (e.) in the course of a business transaction. See Barmettler v. Reno Air, Inc., 956 P.2d 1382, 1387 (Nev. 1998); Weingartner v. Chase Home Fin., LLC, 702 F.Supp.2d 1276, 1291 (D. Nev. 2010). Pursuant to Rule 9(b), the party must provide particularized allegations about the circumstances of the negligent misrepresentation. See Fed. R. Civ. P. 9(b) ("In alleging . . . mistake, a party must state with particularity the circumstances constituting . . . mistake."); Concha v. London, 62 F.3d 1493, 1502 n.6 (9th Cir. 1995) ("Rule 9(b) applies not only to allegations of 'fraud' but also to allegations of 'mistake.'"); Weingartner, 702 F.Supp.2d at 1291 (applying Rule 9(b) to a Nevada negligent misrepresentation claim).

Defendant fails to meet this heightened pleading standard for the purposes of his negligent misrepresentation claim. In his answer, Defendant alleges that Plaintiff made three negligent misrepresentations: (1.) RBV did not know that the Loan Agreement's collateral had multiple owners; (2.) Parnham should personally back BSM's loan; and (3.) Parnham was not obligated to make payments on the Loan Agreement during subsequent negotiations. This is insufficient. After reviewing Defendant's answer, this Court could not identify *who* made these statements or *when* they were made. Furthermore, Defendant does not adequately explain how they were false or negligent.

In sum, Defendant's allegations of negligent—or mistaken—misrepresentations fail to meet Rule 9(b)'s heightened pleading standard. See Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (A complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [it].") (citation omitted). Accordingly, the Court dismisses his claim for negligent misrepresentation.

### D. Defendant Has Failed to State a Claim for Intentional Interference with Contractual Relations (Count 5)

"The elements of a claim for intentional interference with contractual relations are '(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.'" Krause v. Becker, 238 P.3d 830, at 2 (Nev. 2008) (unpublished table decision) (quoting Sutherland v. Gross, 772 P.2d 1287, 1290 (Nev. 1989)). Plaintiff focuses on the

first element, arguing that Defendant has not alleged the existence of a valid contract.

The Court agrees, as Defendant merely alleges that he was a shareholder in, and independent contractor for, BSM. Taken at face value, these allegations do not establish the existence of a specific valid contract between BSM and Parnham. Since Defendant fails to plead an essential element of intentional interference with contractual relations, he fails to state a claim for this tort. Accordingly, the Court dismisses this claim.

### E. Defendant Fails to State a Claim for Abuse of Process (Count 7)

Under Nevada law, an abuse of process claim requires two showings: "(1) an ulterior purpose by the [party abusing the process] other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." Land Baron Inv. v. Bonnie Springs Fam. LP, 356 P.3d 511, 519 (Nev. 2015) (quoting LaMantia v. Redisi, 38 P.3d 877, 880 (Nev. 2002)).

Defendant fails to allege the second element of abuse of process. To summarize, Defendant alleges that RBV has abused the legal process by launching this lawsuit to burden him with legal fees. But the Nevada Supreme Court has clarified that merely "filing a complaint does not constitute abuse of process." Id. at 520. Put differently, "[t]he tort requires a 'willful act' that would not be 'proper in the regular conduct of the proceeding,' . . . and filing a complaint does not meet this requirement." Id. (citation omitted). Accordingly, Defendant's answer fails to allege a "willful act" that can support his abuse of process claim. Therefore, the Court dismisses it at this juncture.

### F. The Court Will Not Dismiss Defendant's Prayer for Punitive Damages at this Time

Plaintiff urges the Court to dismiss Defendant's prayer for punitive damages because he has failed to state claims upon which relief can be granted. But this Court has already concluded that Defendant has stated plausible, fraud-based claims. See supra Part IV.A. In Nevada, punitive damages are available for these types of claims. See Bongiovi v. Sullivan, 138 P.3d 433, 450–51 (Nev. 2006) ("[P]unitive damages may be awarded when the . . . defendant is 'guilty of . . . fraud . . . .'") (quoting NEV. REV. STAT. ANN. § 42.005(1) (West 2025)). Therefore, the Court finds that it would be inappropriate to dismiss Defendant's prayer for punitive damages at this procedural

posture, and it declines to do so.

## V.  CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Defendant's First Amended Counterclaims (ECF No. 55) is **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES** Defendant's counterclaims for: breach of the implied covenant of good faith and fair dealing (Count 3); negligent misrepresentation (Count 4); intentional interference with contractual relations (Count 5); and abuse of process (Count 7). These dismissals are without prejudice. Finally, the Court declines to dismiss Defendant's prayer for punitive damages at this juncture.

**DATED:** September 29, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**